PEARSON, MJ

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| RICKY DANIELS, | ) | CASE NO.   3:08-CV-00697 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE POLSTER |
| v. | ) | |
| | ) | MAGISTRATE JUDGE PEARSON |
| CARL ANDERSON, Warden, | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |

## I.  Introduction

Before the Magistrate Judge is Ricky Daniels' ("Daniels" or "Petitioner") petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1]  ECF No. 1.  Daniels is incarcerated at the Toledo Correctional Institution serving an aggregate sentence of eighteen years imposed for an involuntary manslaughter and endangering children conviction.  *See* http://www.drc.ohio.gov/ (website of the Ohio Department of Rehabilitation and Correction for current status of and basis for Daniels' incarceration).

Daniels raises three grounds for relief in his petition: (1) "Trial Court Errored in imposing Consecutive Sentences"; (2) "Trial Court Errored in Not imposing The Minimum Sentence"; and (3) Due Process Violation due to the Sentence."[2]  ECF No. 1 at 5-8.  Warden Anderson

---

[1]  Pursuant to General Order 2008-17, this case was reassigned to the docket of the undersigned Magistrate Judge.  *See* non-document docket entry dated September 3, 2008.

[2]  Daniels' grounds for relief are written exactly as presented in his petition.

(3:08-CV-00697)

("Respondent") acknowledges having custody of Daniels as a result of his conviction but asserts that Ground One is not cognizable and Grounds Two and Three lack merit.  ECF No. 12.  In response, Daniels counters that Ground One is cognizable and that Grounds Two and Three violate the United States Constitution and Supreme Court precedent.  ECF No. 14.

Having reviewed the record and applicable law, the Court finds that each of Daniels' Grounds for Relief lack merit and that Ground One is not cognizable.  Accordingly, the undersigned Magistrate Judge recommends dismissing Daniels' habeas corpus petition in its entirety.

## II.  Factual and Procedural History

### A.  Underlying Offense, Plea, and Sentencing

The Putnam County Court of Appeals, Third Appellate District ("State Court of Appeals") reviewed Daniels' case on direct appeal.[3]  The underlying facts are as follows:[4]

> On March 29, 2003, at around 11:30 p.m., Daniels picked up his five month old son, Trey Daniels, from his mother's residence.  Daniels took Trey to his brother's residence and proceeded to consume twelve beers and a fourth of a bottle of Green Apple Pucker.  At around 4:00 in the morning, Daniels left his brother's residence with Trey and returned to his own residence.  Daniels admits that he was intoxicated and under the influence of cocaine when he left his brother's house.

> Thereafter, at around 4:30 a.m., Daniels called 911 to report that Trey had stopped breathing.  Consequently, emergency personnel were dispatched to Daniels' home, and Trey was eventually lifeflighted to St. Vincent's Children's  Mercy

---

[3]  Facts found by the state appeals court on its review of the trial record are presumed correct by a federal court reviewing a petition for a writ of habeas corpus.  *Brumley v. Wingard,* 269 F.3d 629, 637 (6th Cir. 2001).

[4]  This recitation of facts is derived from the decision of the State Court of Appeals in Daniels' direct appeal of his first re-sentencing.  ECF No. 12-2 at 58-68 (Ex. 15).

(3:08-CV-00697)

Hospital in Toledo, Ohio.  On April 1, 2003, Trey was removed from life support and passed away.  The subsequent autopsy revealed that Trey had died as a result of shaken-impact syndrome, which had been caused by child abuse.  Doctors also determined that Trey's left arm had been broken and that bruises on his head were consistent with child abuse.

Based on the conclusions in the autopsy report and the investigation of the police, Daniels was charged with one count of endangering children in violation of R.C. 2919.22(B)(1) & (E)(2)(d), a felony of the second degree, one count of felonious assault in violation of R.C. 2903.11(A)(1), a felony of the second degree, and one count of murder in violation of R.C. 2903.02(B)[sic] of the first degree. Eventually, Daniels waived his right to an indictment and pled guilty by way of a bill of information to one count of endangering children in violation of R.C. 2919.22(B)(1) & (E)(2), a felony of the second degree, and one count of involuntary manslaughter in violation of R.C. 2903.04(A), a felony of the first degree.  In exchange for his guilty plea, the State dismissed the original three count indictment.

The trial court accepted Daniels' guilty plea, and a sentencing hearing was conducted on July 23, 2003.  After considering the arguments of both parties, the presentence investigation report, the coroner's report, Trey's medical records, the victim impact statements of Trey's mother and paternal grandmother, and the diagnostic evaluations of Daniels, the trial court found that Daniels had committed the worst forms of the offenses and posed the greatest likelihood to commit future crimes.  Therefore, the trial court found that maximum sentences would be appropriate and sentenced Daniels to eight years on the endangering children conviction and ten years on the involuntary manslaughter conviction.  These sentences were the maximum that the trial court could have imposed under R.C. 2929.14(A)(1) & (2).  Furthermore, the trial court ordered Daniels' sentences to be served consecutively.

ECF No. 12-2 at 60-62 (Ex. 15).  The trial court sentenced Daniels on July 23, 2003, however, the county clerk's office journalized his sentence on July 28, 2003.  ECF No. 12-1 at 9 (Ex. 5).

## B.  **Direct Appeal**

On December 3, 2003, Daniels, through counsel, presented two assignments of error in his appellate brief to the State Court of Appeals:

Assignment of Error I:   The Bill of Information was insufficient under Crim. R. 7(B) for it failed to state an essential element of endangering children.

-3-

(3:08-CV-00697)

> Assignment of Error II:   The trial court committed an error of law by imposing maximum consecutive sentences.

ECF No. 12-1 at 13 (Ex. 6).   The State Court of Appeals, on April 26, 2004, sustained the first assignment of error, ruled the second moot, and thereby reversed the trial court's judgment.  ECF No. 12-2 at 30 (Ex. 9).

### C.  First Re-sentencing and Subsequent Appeals

Upon remand after the reversal by the State Court of Appeals, the trial court re-sentenced Daniels on August 11, 2004, to the same aggregate eighteen year sentence for both offenses.[5] ECF No. 12-2 at 31-34 (Ex. 10).  The State Court of Appeals dismissed Daniels' first appeal as untimely.  ECF No. 12-2 at 39-40 (Ex. 12).  Daniels then filed a motion, through counsel, for leave to file a delayed appeal that the State Court of Appeals granted on October 7, 2004.  *See* ECF No. 12-2 at 44 (Ex. 13).  Daniels set forth one assignment of error:

> Assignment of Error I:   The trial court committed an error of law by imposing maximum consecutive sentences.

ECF No. 12-2 at 46 (Ex. 13).  The State Court of Appeals rejected Daniels' claim that his maximum consecutive sentences were unlawful according to *Blakely v. Washington*, 542 U.S. 296 (2004), and affirmed the judgment of the trial court on April 25, 2005.  ECF No. 12-2 at 67-68 (Ex. 15).

Daniels' appellate counsel filed an appeal to the Supreme Court of Ohio and set forth propositions of law as follows:

---

[5]  On August 19, 2004, the trial court issued a *Nunc Pro Tunc* entry from the re-sentencing hearing correcting a clerical error regarding the date of sentencing.  ECF No. 12-2 at 35-38 (Ex. 11).

(3:08-CV-00697)

> Proposition of Law No. I: A trial court must state its reasons for imposing consecutive sentences when R.C. 2929.14(B)(4)(b) states the at least two of the offense[s] must be part of multiple offense and its reasons for imposing maximum sentences when R.C. 2929.19(B)(2)(e) requires that the two offenses arise out of a single incident and the court has imposed the maximum sentence for the offense of the highest degree.

> Proposition of Law No. II: The imposition of more than the minimum sentence violates the Sixth Amendment pursuant to U.S. v. Booker and Blakely v. Washington[.]

ECF No. 12-3 at 2 (Ex. 16). The Supreme Court of Ohio, on October 5, 2005, allowed Daniels'

appeal on Proposition of Law No. II only and ordered, *sua sponte*, "that [the] cause be held [until

after the issuance of] the decisions in" *State v. Quinones* and *State v. Foster*. ECF No. 12-3 at 38

(Ex. 17).  On May 3, 2006, the Supreme Court of Ohio reversed the State Court of Appeals'

decision and remanded Daniels' case (as to Proposition of Law No. II) to the trial court for re-

sentencing consistent with *State v. Foster*, 109 Ohio St.3d 1, 845 N.E.2d 470 (2006).[6]  ECF No.

12-3 at 39 (Ex. 18).

### D.  Second Re-sentencing and Subsequent Appeals

Pursuant to the Supreme Court of Ohio's remand order, the trial court, again, re-

sentenced Daniels to an aggregate eighteen year sentence on the charges of involuntary

manslaughter and endangering children on August 11, 2006.[7]  ECF No. 12-3 at 40-43 (Ex. 19).

Daniels then appealed, *via* the same appellate counsel from his previous appeals, this re-

---

[6]  *In State v. Foster*, the Ohio Supreme Court eliminated from Ohio's felony criminal statute provisions similar to those found to be violative of the federal sentencing regime.

[7]  Respondent marks July 5, 2006, the sentencing hearing date, as the date of Daniels' re-sentencing instead of the journalized date of August 11, 2006.  ECF No. 12 at 7.

(3:08-CV-00697)

sentencing and asserted the following sole assignment of error to the State Court of Appeals:

> Assignment of Error I:  The judicially created felony sentencing statutes pursuant to *State v. Foster* violate the Due Process Clause.

ECF No. 12-3 at 45 (Ex. 20).   Having found that *Foster* does not violate due process, the State

Court of Appeals affirmed the judgment of the trial court on May 14, 2007.  ECF No. 12-3 at 82-

89 (Ex. 22).

Daniels appealed to the Supreme Court of Ohio, through counsel, and set forth one

proposition of law in his brief filed on June 28, 2007:

> The felony sentencing statutes as applied pursuant to *State v. Foster* violate the Due Process Clause of the United States Constitution.

ECF No. 12-3 at 91 (Ex. 23).  On October 24, 2007, the Supreme Court of Ohio denied Daniels'

leave to appeal.  ECF No. 12-3 at 118 (Ex. 24).

### E.  Federal Habeas Petition

Daniels filed his petition for a writ of habeas corpus, *pro se*, on March 20, 2008,

presenting three grounds for relief:

> GROUND ONE:  Trial court Err[]ed in imposing Consecutive Sentences
>
> GROUND TWO:  Trial Court Err[]ed in Not imposing the Minimum Sentence
>
> GROUND THREE:  Due process Violation due to the Sentence

ECF No. 1 at 5-9.  Respondent contends that Ground One is not cognizable and that Grounds

Two and Three should be denied on the merits. ECF No. 12.  Daniels filed a traverse wherein he

contends that Ground One is cognizable and that Grounds Two and Three violate the United

States Constitution and Supreme Court precedent.  ECF No. 14.

-6-

(3:08-CV-00697)

### III.  Procedural Gateways to Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposed procedural rules designed to permit federal judicial resources to focus on only the most compelling habeas corpus petitions.  Under AEDPA, a petitioner must successfully pass through several procedural gateways to qualify for federal review.  Those gateways and their application to the instant petition are provided below.

### A.  Jurisdiction

Writs of habeas corpus may be granted by a district court within its respective jurisdiction:

> Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court which contains two or more Federal judicial districts, the application may be filed in the district court for the district within which the State court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application.

28 U.S.C. § 2241(a) and (d).

Daniels was convicted in the Court of Common Pleas in Putnam County, Ohio, which is within the Northern District of Ohio.  This Court, therefore, has jurisdiction over Daniels' petition.

### B.  Statute of Limitations

AEDPA imposes a one-year statute of limitations period for federal habeas petitions filed by prisoners challenging state-court convictions after its April 24, 1996 effective date.  28 U.S.C. § 2244(d); *McCray v. Vasbinder,* 499 F.3d 568, 571 (6th Cir. 2007).  The one-year period begins to run on the date judgment became final.  28 U.S.C. § 2244(d)(1); *Jimenez v. Quarterman*, 129

(3:08-CV-00697)

S.Ct. 681, 685-86 (2009).  As this one-year period is not a jurisdictional bar, a petitioner may

have an untimely petition reviewed if the petitioner establishes that the doctrine of equitable

tolling applies.  *Dunlap v. United States*, 250 F.3d 1001, 1003 (6th Cir. 2001).

Respondent has not asserted that Daniels' petition is time-barred.  Upon independent

review of the record, the undersigned Magistrate Judge finds that Daniels' petition is timely filed

pursuant to 28 U.S.C. § 2244(d).

## C.  Evidentiary Hearing

The habeas corpus statute authorizes an evidentiary hearing in limited circumstances

when the factual basis of a claim has not been adequately developed in state court proceedings.

28 U.S.C. § 2254(e)(2).

The undersigned finds that there is no need for an evidentiary hearing in the instant case

and Daniels has not requested such a hearing as his claims involve legal issues that can be

resolved without additional factual inquiry.

## D.  Exhaustion of State Remedies

As a general rule, a state prisoner must exhaust all available state remedies or have no

remaining state remedies available before a federal court will review a petition for a writ of

habeas corpus.  28 U.S.C. § 2254(b) & (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004);

*Riggins v. McMackin*, 935 F.2d 790, 793 (6th Cir. 1991).  If any state procedures for relief

remain available, then the petitioner has not exhausted all of his state remedies.  *Rust v. Zent*, 17

F.3d 155, 160 (6th Cir. 1994).  If relief is no longer available in state court, however, exhaustion

can be rendered moot: "If no remedy exists, and the substance of a claim has not been presented

-8-

(3:08-CV-00697)

to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether

cause and prejudice exist to excuse the failure to present the claim in the state courts." *Id.* at 160;

*see also Buell v. Mitchell*, 274 F.3d 347, 349 (6th Cir. 2001).  The exhaustion requirement is

properly satisfied when the highest court in the state in which petitioner was convicted has been

given a full and fair opportunity to rule on all the petitioner's claims.  *Manning v. Alexander*, 912

F.2d 878, 881 (6th Cir. 1990).

Daniels has no remaining state remedies for his claims, therefore, his claims have been

exhausted.

### E.  Cognizable Claims

Federal courts have limited subject matter jurisdiction over actions arising from state

court decisions.  In order for a federal court to have subject matter jurisdiction over a habeas

petition seeking review of a state prisoner's conviction, two prerequisites must be met.  First, the

petitioner must be in state custody at the time the habeas petition is filed.  U.S.C. § 2254(a).

Second, the habeas petition must present a federal question, meaning, the prisoner must

challenge the legality of the custody on the ground that it was imposed in "violation of the

Constitution or laws or treaties of the United States."  28 U.S.C. §§ 2241(c)(3), 2254(a).  Federal

courts may not issue a writ of habeas corpus based solely upon an error of state law.  *Lewis v.

Jeffers*, 497 U.S. 764, 780 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984) (per curiam)  ( "A

federal court may not issue the writ on the basis of a perceived error of state law.")  In fact, the

Sixth Circuit has upheld the dismissal of claims based solely on technical errors of state law as

opposed to violations of constitutional law.  *See e.g.*, *Frazier v. Hoffman*, 343 F.3d 780, 789 (6th

(3:08-CV-00697)

Cir. 2003), *supplemented*, 348 F.3d 174 (6th Cir. 2003) (denying habeas review based upon

"technical correctness of [state court's] evidentiary rulings" as opposed to a constitutional ground

such as due process); *Riggins v. McMackin*, 935 F.2d 790, 795 (6th Cir. 1991) (finding that

district court erred in granting habeas corpus relief on ground the plea colloquy failed to conform

to state rules; "district court's sole inquiry should have been . . . whether . . . [the] guilty plea

comported with the protections of due process").

Rulings by the state's highest court on matters of state law are binding on federal courts.

*Wainwright v. Goode*, 464 U.S. 78, 84 (1983).  This deference prohibits a federal court from

second-guessing a state court's interpretation of its own procedural rules.  *Allen v. Morris*, 845

F.2d 610, 614 (6th Cir. 1988).  Even if a state court errs in applying its own procedural default

statute, the error is not cognizable in federal habeas review.  *Simpson v. Jones*, 238 F.3d 399,

406-07 (6th Cir. 2000).

As detailed below, Ground One of Daniels' petition for habeas corpus relief – his claim

that the trial court erred by imposing consecutive sentences – is an attack on the length of the

sentence imposed by the state court without an attendant constitutional claim.  Therefore, Ground

One is not cognizable, *i.e.*, not capable of being judicially examined in federal court.

**F.  Procedural Default**

Procedural default occurs when a petitioner fails to present his constitutional claims fairly

to the highest state court in a federal constitutional context.  *See Anderson v. Harless*, 459 U.S. 4

(1982); *Picard v. Connor*, 404 U.S. 270 (1971).  Reasons of federalism and comity generally bar

federal habeas corpus review of "contentions of federal law . . . not resolved on the merits in the

-10-

(3:08-CV-00697)

state proceeding due to respondent's failure to raise them there as required by state procedure."

*Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  When a petitioner:

> has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that the failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v Thompson*, 501 U.S. 722, 750 (1991).

Respondent has not asserted the defense of procedural default against any of the Grounds for Relief set forth in Daniels' petition thereby waiving the defense.  The undersigned, upon independent review of the record, does not find that Daniels' Grounds for Relief are procedurally defaulted.

### IV.  Daniels' Procedural Frailty: Ground One is Not Cognizable

A federal court reviewing a petition for habeas corpus is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.  *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991).  "A federal court may not issue the writ [of habeas corpus] on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  However, if the error is so egregious as to amount to a denial of fundamental fairness or of other federal rights, the federal court may grant the habeas petition.  *See id.*

In Ground One, Daniels argues that the trial court failed to articulate reasons for imposing consecutive sentences as required by various state sentencing statutes.  ECF No. 14 at 5-8. Daniels exclusively relies upon state law to support this argument.  He does not argue that the trial court's imposition of consecutive sentences violated the Sixth Amendment, his right to due

(3:08-CV-00697)

process, the rulings in *Blakely*, or *Apprendi v. New Jersey*, 530 U.S. 466 (2000), or any other federal law.  It is well established that a writ of habeas corpus disturbing a state court judgment is warranted only if the prisoner is held "in violation of the Constitution or laws or treaties of the United States."  *Pulley*, 465 U.S. at 41.  Ground One presents none of these violations and is, therefore, not cognizable in a federal habeas petition.

At the time of Daniels' sentencing and first re-sentencing, and until 2006, Ohio's sentencing statutes required judicial fact-finding before imposition of, *inter alia*, a greater-than-the-maximum sentence or consecutive sentence.  *See State v. Foster*, 109 Ohio St.3d 1, 25 845 N.E.2d 470, 494 (2006).  The Supreme Court of Ohio through its *Foster* decision severed from Ohio law those statutory sections that also violated the United States Supreme Court's decision in *Blakely*.  "Accordingly, [the Supreme Court of Ohio] concluded that trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences."  *Foster*, 109 Ohio St.3d at 30 (¶ 100).

At his final re-sentencing, the state sentencing statutes that Daniels argues the state trial court violated were no longer in existence.  Daniels' second, and final re-sentencing, occurred after and pursuant to *Foster*.  By that time, the Supreme Court of Ohio had severed those statutes and deemed them unconstitutional *via Foster*.  *Id.* at 29-30 (¶¶ 97-99).  Therefore, the trial court's obligation or authority under the severed statutes no longer existed and Daniels' final sentence did not result from the application of unconstitutional statutes.  Accordingly, Daniels' argument fails.

-12-

(3:08-CV-00697)

Moreover, state court determinations on questions of state sentencing law are not cognizable on federal habeas review.  In *Estelle*, the Supreme Court "reemphasize[d] that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 67-68.  Additionally, the Sixth Circuit has held that challenges to the consecutive nature of sentences imposed according to state law are not cognizable on federal habeas review.  *See Harrison v. Parke*, 917 F.2d 1304, 1990 WL 170428, * 2 (6th Cir. Nov. 6, 1990) (table) (per curiam) ("Because it is a matter of substantive state law whether Harrison's sentences should run concurrently or consecutively, we find that the district court did not err in ruling that Harrison's challenge to his consecutive sentences was not cognizable in a federal habeas corpus proceeding.") (*citing Wainwright v. Sykes*, 433 U.S. 72, 81 (1977)).  District courts in our circuit have reached this conclusion as well.  *See e.g.*, *McClure v. Warden*, 2009 WL 536105, *1 (S.D. Ohio Mar. 3, 2009) (noting with approval, "the Magistrate Judge found that to the extent petitioner contends . . . the trial court committed errors under Ohio law in imposing consecutive prison terms, his claims for relief are not cognizable . . . .") (*citing Pulley v. Harris*, 465 U.S. 37, 41 (1984)).

The United States Supreme Court recently addressed the issue of state trial judge imposed consecutive sentences and the applicability of the Sixth Amendment in *Oregon v. Ice*, --- U.S. ----, 129 S.Ct. 711 (2009).  Daniels' filed his traverse prior to the Supreme Court's issuance of its decision in *Oregon v. Ice* which finds "that allowing state judges to find facts when determining whether to impose consecutive sentences does not violate the Sixth Amendment as interpreted by *Blakely*." *Evans v. Hudson*, 575 F.3d 560, 563 (6th Cir. 2009) (*citing Ice*, 129 S.Ct. at 714-15).

-13-

(3:08-CV-00697)

The Court's decision in *Ice* clarifies that when the trial judge imposed consecutive sentences, Daniels' Sixth Amendment rights as interpreted by *Blakely* were not violated.

To the extent Daniels argues the trial court erred, under state law, in imposing consecutive sentences the Court cannot review the claim in Ground One because there is no attendant constitutional error; nothing that equates to an egregious error amounting to a denial of fundamental fairness warranting habeas relief.  *See Pulley*, 465 U.S. at 41.  Relief *via* habeas corpus is available "only to correct wrongs of a constitutional dimension."  *Wainwright v. Goode*, 464 U.S. 78, 83 (1983)

**V.  Merit Review**

**A.  Standard of Review**

If a petitioner's claims overcome the procedural barriers of time limitation, exhaustion, cognizability, and procedural default, then AEDPA governs the Court's review of a habeas corpus petition.  The Antiterrorism and Effective Death Penalty Act of 1996 altered the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus.  As amended, 28 U.S.C. § 2254(d) provides:

> An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Carey v. Musladin*, 549 U.S. 70, 74 (2006); *Williams v. Taylor*, 529 U.S. 362, 379-413 (2000).  Law is "clearly established" only by holdings of the Supreme

-14-

(3:08-CV-00697)

Court, not its dicta, and the law must be clearly established at the time of the petitioner's

conviction.  *Carey*, 549 U.S. at 74.

Courts must give independent meaning to the phrases "contrary to" and "unreasonable

application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may
> obtain federal habeas relief with respect to a claim adjudicated on the merits in state
> court.  Under the statute, a federal court may grant a writ of habeas corpus if the
> relevant state-court decision was either (1) "*contrary to* . . . clearly established
> Federal law, as determined by the Supreme Court of the United States," or (2)
> "*involved an unreasonable application of* . . . clearly established Federal law, as
> determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court).  A decision is "contrary to"

clearly established federal law if it reaches a conclusion opposite to that reached by Supreme

Court holdings on a similar question of law or if it faces a set of facts materially indistinguishable

from relevant Supreme Court precedent and still arrives at an opposite result.  *Id.* at 405-06.  A

decision involves an unreasonable application of federal law only if the deciding court correctly

identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand.

*Doan v. Brigano*, 237 F.3d 722, 729-31 (6th Cir. 2001).  If a court fails to identify the correct

legal principal at issue, the "unreasonable application of" clause does not apply.  *Id.* at 730.  "The

central inquiry is whether the state court decision was objectively unreasonable and not simply

erroneous or incorrect."  *Harris v. Haeberlin*, 526 F.3d 903, 910 (6th Cir. 2008).  Therefore, "a

reviewing court must be careful not to substitute its own judgment for that of the state court by

equating the more stringent standard of 'objectively unreasonable' with the more lax standard of

'clear error.'"  *Id.*

-15-

(3:08-CV-00697)

"[A] determination of a factual issue made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1).  The petitioner, however, may rebut "the presumption of correctness by clear and convincing evidence."  *Id.*  "[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding."  *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## B.  Grounds Two and Three Lack Merit

Daniels argues in Grounds Two and Three that his greater-than-the-minimum sentence and Ohio's sentencing statutes pursuant to *Foster* violate the Sixth Amendment, the Due Process clause, *Blakely*, *Apprendi*, and *United States v. Booker*, 543 U.S. 220 (2005).[8]  ECF No. 14.  Daniels' specific arguments include: his sentence violated the Sixth Amendment as described in *Blakely*, *Apprendi*, and *Booker*; his re-sentencing pursuant to *Foster* violated Due Process for lack of notice and fair warning (*i.e.*, *ex post facto* due process concerns according to *Bouie v. City of Columbia*, 378 U.S. 347 (1963) and *Rogers v. Tennessee*, 532 U.S. 451 (2001)); and, *Foster* departed from the doctrine of the separation of powers.[9]  ECF No. 14 at 8-12.  Several petitioners

---

[8]  In *Apprendi* and *Blakely*, the Supreme Court substantially changed the federal sentencing scheme to ensure that the maximum sentence a judge may impose must be based *solely on the facts reflected in the jury verdict or admitted by the defendant*.  *See Chontos v. Berghuis*, --- F.3d ----, 2009 WL 3734675 at *1 (6th Cir. 2009) (finding "[u]nder these cases, judicial factfinding may not increase the maximum penalty beyond that to which the jury's verdict alone exposes the defendant."); *see also United States v. Booker*, 543 U.S. 220 (2005).

[9]  The State Court of Appeals' denial of Daniels' appeal after his second re-sentencing relied upon *State v. Elswick*, 2006 WL 3833868 (Ohio App.Ct 2006), in dismissing the claim that the Ohio Supreme Court's decision in *Foster* violated the principle of the separation of powers.  ECF No. 12-3 at 88.  "Such arguments about the structure of a state's governance are

-16-

(3:08-CV-00697)

have been denied habeas relief based upon essentially the same arguments asserted by Daniels.

*See e.g.*, *Kravochuck v. Shewalter*, 2009 WL 3208663 (N.D. Ohio Oct. 5, 2009) (Nugent, J.);

*Torres v. Beightler*, 2009 WL 2705880 (N.D. Ohio Aug. 27, 2009) (Nugent, J.); *McKitrick v.*

*Smith*, 2009 WL 1067321 (N.D. Ohio Apr. 21, 2009) (Gaughan, J.); *Sanchez v. Konteh*, 2009

WL 539710 (N.D. Ohio Mar. 4, 2009) (Gaughan, J.); *Smith v. Wilson*, 2008 WL 4758696 (N.D.

Ohio Oct. 29, 2008) (Oliver, J.);  *Pitts v. Warden*, 2008 WL 4758697 (N.D. Ohio Oct. 29, 2008)

(Oliver, J.); *Wentling v. Moore*, 2008 WL 2778510 (N.D. Ohio July 14, 2008) (Boyko, J.); *Lyles*

*v. Jeffreys*, 2008 WL 1886077 (N.D. Ohio Apr. 24, 2008) (Oliver, J.); *McGhee v. Konteh*, 2008

WL 320763 (N.D. Ohio Feb. 1, 2008) (Nugent, J.).

### 1. Daniels' Sentence does not Violate the Sixth Amendment

Daniels asserts in Ground Two that his greater-than-the-minimum sentences violated his

Sixth Amendment rights as described in *Blakely*, *Apprendi*, and *Booker*.  Daniels' assertion is

without merit.

Until 2006, Ohio judges who sentenced a defendant to greater-than-the-minimum

sentence or to consecutive sentences were required to make certain findings of fact sufficient to

overcome Ohio's presumption in favor of minimum and concurrent sentences.  *Foster*, 109 Ohio

St.3d at 25.  The Ohio Supreme Court's decision in *Foster* severed the presumptions in favor of

---

matters for the individual states, not for the federal government.  The only structural requirement
imposed on the states by the Constitution is that each state shall have a republican form of
government.  Art. IV, § 4.  All else, consistent with the federal rights guaranteed a state's
citizens, is a matter for the individual states."  *McKitrick*, 2009 WL 1067321 at *19 n.4
(Vecchiarelli, M.J.).  Accordingly, the State Court of Appeal's decision was not contrary to, nor
involved an unreasonable application of, any clearly established federal law.

(3:08-CV-00697)

minimum and concurrent sentences from the sentencing statutes as unconstitutional following the

guidance provided by *Blakely* and  *Apprendi*.  Because *Foster* severed the findings of fact

requirement from Ohio sentencing law, judges in Ohio are no longer required to justify greater

than minimum or consecutive sentences; imposing these types of sentences is discretionary.  The

*Foster* decision instructed sentencing courts as follows:

> Courts shall consider those portions of the sentencing code that are unaffected by
> today's decision and impose any sentence within the appropriate felony range. If an
> offender is sentenced to multiple prison terms, the court is not barred from requiring
> those terms to be served consecutively.

*Foster*, 109 Ohio St.3d at 30.

The state trial court sentenced Daniels to ten years for involuntary manslaughter and eight

years for child endangerment, to be served consecutively.  Ohio law categorizes involuntary

manslaughter as a felony of the first degree and child endangerment as a felony of the second

degree.  O.R.C. §§ 2903.04(A), 2919.22(B)(1) & (E)(2).  The penalty range in Ohio for a felony

of the first degree is three to ten years, and the range for a felony of the second degree is two to

eight years.  O.R.C. § 2929.14(A)(1) & (2).

Daniels' second re-sentencing occurred after the Ohio Supreme Court's *Foster* decision.

Analyzing the same issue, the Court in *McKitrick* determined:

> Because *Foster* allowed Ohio courts to sentence a defendant to any term within the
> appropriate felony range or to consecutive sentences without making any judicial
> findings of fact, it cannot be said that McKitrick's sentence violated the holdings in
> *Blakely* or *Apprendi*. *Blakely* and *Apprendi* prohibit a judge from sentencing a
> defendant to any sentence greater than the maximum sentence that may be imposed
> without making judicial findings of fact.  The maximum sentence to which the court
> could have sentenced McKitrick without making judicial findings of fact was
> consecutive terms of ten years and eight years. McKitrick's sentence was, therefore,
> well within the range permitted by *Blakely* and *Apprendi*. For this reason,

-18-

(3:08-CV-00697)

McKitrick's second ground for relief is without merit and should be denied.

*McKitrick*, 2009 WL 1067321 at *17.  Similarly, Daniels' sentence of consecutive terms of ten

years and eight years was within the range that may be imposed without making judicial findings

of fact as permitted by *Blakely* and *Apprendi*.  Thus, Daniels' sentence does not violate the Sixth

Amendment or clearly established Federal law.

With respect to Daniels' argument that his sentence violated *Booker*, the Supreme Court

of Ohio explicitly turned to *Booker* to cure the unconstitutionality of Ohio's sentencing statutes.

*Foster*, 109 Ohio St.3d at 26-27.  In *Booker*, the Supreme Court confronted the constitutionality

of a federal sentencing statute that resembled Ohio's by requiring specified judicial findings of

fact for upward departures from a base sentence.  The Court found that such mandatory fact-

finding violated *Apprendi*.  Following the guidance set forth in *Booker*, the *Foster* Court freed

Ohio judges to sentence defendants within the statutory sentencing ranges or to consecutive

sentences, using the previously-mandatory factors as *guidelines* to determine where in the range a

defendant should be sentenced.  Because Daniels' sentence was within the statutory range, the

trial court did not violate the Sixth Amendment as described in *Booker*.

The Sixth Circuit recently rejected an argument similar to Daniels' — that he was entitled

to a minimum sentence.  In *Chontos v. Berghuis*, the Sixth Circuit ruled that "[t]he Sixth

Amendment jury trial right simply ensures that the defendant will never get *more* punishment

than he bargained for when he did the crime; it does not promise that he will receive anything

less than that."  *Chontos*, --- F.3d ----, 2009 WL 3734675 at *3 (emphasis original) (internal

citations omitted).  When Daniels violated the law for which he was sentenced, he bargained for

-19-

(3:08-CV-00697)

a sentence that would not exceed the maximum penalty.  He received  no more than he bargained for.  Accordingly, Ground Two of Daniels' petition is without merit and should be denied.[10]

### 2.  Daniels' Re-Sentencing According to *Foster* does not Violate Due Process

Daniels argues in Ground Three that his re-sentencing, "pursuant to Foster [sic], violated the Due Process Clause for he did not have notice or fair warning that the sentencing statutes, which were in effect at the time of the offense, would not be applicable."  ECF No. 14 at 10. Daniels claims that the "unforeseeable and retroactive judicial expansion of" Ohio's sentencing statutes violated his right to fair warning as described by the United States Supreme Court in *Rogers* and *Bouie*.  ECF No. 14 at 11.  Daniels reliance on *Rogers* and *Bouie* is misplaced and his argument is without merit because the State Court of Appeals' decision is neither contrary to, nor an unreasonable application of, clearly established federal law.[11]

In *Rogers*, the Supreme Court unequivocally stated that

---

[10]  The Court notes that had Daniels argued that his consecutive sentences (Ground One) violated his Sixth Amendment rights as described in *Blakely*, *Apprendi*, and *Booker*, the Court's analysis above and ultimate conclusion that the argument lacks merit would have applied to that argument as well.

[11]  The State Court of Appeals' denial of Daniels' appeal after his second re-sentencing relied upon *State v. McGhee*, 2006 WL 2796275 (Ohio Ct. App. Oct. 2, 2006), in dismissing the due process argument.  ECF No. 12-3 at 87.  The *McGhee* Court held:

> Because McGhee knew the potential statutory sentence for committing a first degree felony, because he had notice that Ohio's sentencing statutes were subject to judicial scrutiny, and because McGhee was unlikely to amend his criminal behavior in light of a sentencing change, we cannot find the Ohio Supreme Court's holding in *Foster* violates federal notions of due process as established in *Bouie* and *Rogers*.

*McGhee*, 2006 WL 2796275 at *7.

-20-

(3:08-CV-00697)

> As the text of the [Ex Post Facto] Clause makes clear, it is a limitation upon the powers of the Legislature, and does not of its own force apply to the Judicial Branch of the government . . . .  We have observed, however, that limitations on ex post facto judicial decisionmaking are inherent in the notion of due process.

*Rogers*, 532 U.S. at 456.  Daniels' claim in Ground Three as applied to the state courts is rooted firmly in due process notions of notice, foreseeablility, and the right to fair warning.  *Id.* at 459.

*Bouie v. City of Columbia* involved defendants whose arrest arose from a civil rights sit-in at a drug store in Columbia, South Carolina.  The South Carolina statute at issue criminalized entry onto land *after* the posting of notice from the owner or tenant prohibiting such entry.  In *Bouie*, the defendants were prosecuted under this statute even though they had not been given prior notice that their entry to the drug store would be criminal.  In order to sustain the unjustified conviction, on appeal, the South Carolina Supreme Court re-interpreted the statute to penalize *remaining* on a property after notice had been given to leave in addition to notice given prior to entering the property.  The United States Supreme Court reversed finding that the South Carolina statute, being precise on its face had been "unforeseeably and retroactively expanded by judicial construction."  *Bouie*, 378 U.S. at 352.  The Supreme Court agreed with the appellants that South Carolina had punished them for conduct that had not been criminal at the time committed.  Therefore, "[i]t follows that they have been deprived of liberty and property without due process of law in contravention of the Fourteenth Amendment."  *Id.* at 363.

The relevant facts in *Bouie* are easily distinguishable from *Foster* and Daniels' case.  First, *Foster* did not criminalize conduct which had not been criminal prior to the decision.  Nor did *Foster* increase the maximum penalty applicable to criminal conduct.  Instead, *Foster* severed those portions of Ohio's sentencing statute that required judicial findings of fact before a court

-21-

(3:08-CV-00697)

could sentence a defendant to greater than a minimum sentence or to consecutive sentences. *Bouie*, on the other hand, stands for the proposition that a court may only prosecute that behavior which was criminal at the time committed.  *Bouie* does not restrict how a defendant is sentenced after the criminal behavior at issue has occurred.

Second, Daniels cannot successfully argue that the statute did not give him fair warning that his conduct constituted a crime.  Daniels was aware of the potential penalty associated with his criminal conduct before and after *Foster*.  The potential maximum sentencing ranges did not change for the crimes he committed nor did the prospect of the trial court's discretion to impose consecutive sentences for committing two felonies.  *See United States v. Duncan*, 400 F.3d 1297, 1307 (11th Cir. 2006) (*quoting Dobbert v. Florida*, 432 U.S. 282, 297 (1977) ("[T]he old statute . . . clearly indicated [the State's] view of the severity of [the offense] and of the degree of punishment which the legislature wished to impose upon [offenders].")).

Moreover, the Sixth Circuit, in addressing such a claim, held that "when addressing ex post facto-due process concerns, questions of notice, foreseeability, and fair warning are paramount."  *United States v. Barton*, 455 F.3d 649, 655 (6th Cir. 2006).  The Sixth Circuit found that because *Blakely* had been decided prior to the defendant's conviction, it "would not have been a leap in logic to expect the Supreme Court to apply *Blakely*" to the federal sentencing guidelines in some manner and, so due process was not violated.  *Id.* at 653-54.  Utilizing the *Barton* analysis, Daniels cannot successfully argue that the trial court violated his due process rights because: 1) The statute gave him fair warning that his conduct constituted a crime; 2) Daniels was aware of the potential penalty associated with his criminal conduct before and

-22-

(3:08-CV-00697)

after *Foster*; and 3) The potential maximum sentencing ranges did not change for the crimes he committed nor did the prospect of the trial court's discretion to impose consecutive sentences for committing two felonies.[12]  Therefore, Daniels had sufficient notice and fair warning of the potential penalties that a judge could impose for the crimes he committed even following the Ohio Supreme Court's decision in *Foster*.  *See Smith*, 2008 WL 4758696 at *14; *McGhee*, 2008 WL 320763 at *11.

Accordingly and pursuant to the Sixth Circuit's teaching in *Barton*, Daniels' reliance on *Bouie* is misplaced and this Court recommends finding no due process violation of federal law as expressed in *Bouie* because the State Court of Appeals' decision was not contrary to, nor involved an unreasonable application of, any clearly established federal law.

### VI.  Conclusion and Recommendation

Having found that Ground One of Daniels' petition is not cognizable and Grounds Two and Three are without merit, the undersigned recommends that the petition of Ricky Daniels for a writ of habeas corpus be dismissed in its entirety with prejudice.


  November 20, 2009                                    s/ *Benita Y. Pearson*
Date                                                        United States Magistrate Judge




---

[12]  Prior to the ruling in *Foster*, Ohio trial court judges could impose greater than the minimum and consecutive sentences, but Ohio law required judicial fact-finding in order to do so.  *Foster*, 109 Ohio St.3d at 25.  Now, Ohio judges have "full discretion" when imposing such sentences according to the ruling in *Foster*.  *Foster*, 109 Ohio St.3d at 30.

(3:08-CV-00697)

## **OBJECTIONS**

Objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

-24-